BAYNE et al. v. BREWER POTTERY CO. et al.

(Circuit Court, N. D. Ohio, W. D. December 21, 1898.)

No. 1,380.

1. INSOLVENT CORPORATIONS—RIGHTS OF RECEIVER—AVOIDING CHATTEL MORTGAGE.

A receiver for the property of an insolvent corporation appointed in a suit in behalf of its general creditors succeeds to the rights of the creditors as well as of the corporation, and may avoid a chattel mortgage given

by the corporation, void as to creditors under a state statute for want of filing, though it is valid as against the corporation.

2. CHATTEL MORTGAGES—NATURE OF PROPERTY—REAL OR PERSONAL.

A mortgage securing an issue of bonds given by a corporation on its property, consisting of land, buildings, machinery, and tools used in a manufacturing business, is a real-estate mortgage as to the land and such structures, machinery, and appliances as are attached thereto, but a chattel mortgage as to such appliances and tools as are not attached, though all are fitted and adapted for use, and are used, as a part of the equipment for the same business.

This was a suit in equity by Daniel K. Bayne and others, creditors, against the Brewer Pottery Company, an insolvent corporation, and others. On distribution of the proceeds of defendants' property, sold by the receiver.

E. W. Tolerton and John K. Rohn, for Samuel B. Sneath.

Hoyt, Dustin & Kelly, for Daniel K. Bayne.

RICKS, District Judge. On the 1st day of May, 1890, the Brewer Pottery Company duly executed to Samuel B. Sneath, trustee, a mortgage to secure 60 bonds, each for the sum of $500, payable on the 1st day of May, 1895, with interest at the rate of 6 per cent. per annum, payable semiannually on the 1st days of May and November of each year. By this mortgage the Brewer Pottery Company conveyed to Samuel B. Sneath, trustee, property described as follows:

"Situated in the city of Tiffin, county of Seneca, and state of Ohio, and known as 'Blocks thirty-five (35) and thirty-eight (38) in Second Highland addition to the city of Tiffin, Seneca county, Ohio,' containing eight (8) acres of land; together with all and singular the brick pottery plant situated thereon, and including all its engines, machinery, tools, molds, and all other personal property belonging thereto, and used by said company in its business of manufacturing."

This mortgage was, on the 7th day of May, 1890, duly recorded as a mortgage of real estate in the Records of Mortgages, vol. 59, p. 165, of Seneca county, Ohio. The mortgage was never verified, as required by the statute of this state covering chattel mortgages, and was not filed as a chattel mortgage, nor refiled at the expiration of any of the several years since its execution, as required by the Ohio statutes governing chattel mortgages. In April, 1897, upon appropriate bill of complaint filed by the complainants, who are creditors, and bring the action in behalf of themselves and other creditors, Frederick A. Duggan was appointed an ancillary receiver of the Brewer Pottery Company, and thereupon he gave proper bond, and has ever since been discharging the duties of such receivership. Samuel B. Sneath filed his answer and cross bill in this action, setting up the mortgage above described, and upon appropriate proceedings the property was appraised and sold under the order of this court, and the fund arising from such sale paid into court to await the further order of the court. Before the sale was made, however, a commissioner was appointed by this court, and directed to separately appraise the real property and the chattels of the Brewer Pottery Company, in order that the court might thereafter determine the proper mode of distribution of the proceeds of the sale. Such appraisement was reported in three schedules, as fol-

lows, viz.: (1) Real estate containing eight acres of land, together with the brick pottery plant situate thereon, and including all its engines, machinery, and fixtures attached, not included in the second and third schedules, appraised at $40,000. (2) Fixtures, machinery, and appurtenances attached to the real estate, appraised at $550. (3) Tools, machinery, molds, saggers, bats, ware boards, not in any manner attached to said realty, but used by said company in the business of manufacturing, appraised at $12,363.

Two questions are presented in the case: First. Can a receiver of the property of this corporation avoid a prior chattel mortgage of the corporation on the ground that it was not filed as required by the law relating to chattel mortgages in the state of Ohio? Second. As to what property described in it, was it a chattel mortgage?

## Conclusions of the Court.

1. The mortgage in this case was a mortgage of real estate as to the property embraced in schedules 1 and 2, and a chattel mortgage as to the property embraced in schedule No. 3. As to the property in schedule No. 3, it came within the provisions of section 4150 of the Revised Statutes of Ohio, which are as follows:

"Sec. 4150. [Mortgage of Chattels Void Unless Filed.] A mortgage or conveyance, intended to operate as a mortgage, of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next section."

It is admitted that the provisions of this section with respect to the mortgage in question were not complied with, and that no attempt was made to do so.

2. The receiver, on his appointment, succeeded to the rights of creditors as well as of the debtor company, and he had the power to enforce the rights which the creditors, but for the proceedings under which the receiver was appointed, might have enforced in their own behalf. While there have been many other cases and authorities cited which warrant this opinion, the case of Farmers' Loan & Trust Co. v. Minneapolis Engine & Machine Works, 35 Minn. 543, 29 N. W. 349, is so analogous in all respects, and the reasons stated are so cogent, that it alone is conclusive of this case, especially in view of the fact that the laws with respect to filing of chattel mortgages in the states of Minnesota and Ohio are substantially alike. In that case, concerning the functions and power of a receiver, the court say:

"The proceeding is for the benefit of all the creditors, for all may come in and share in the distribution. Its purpose is to take all the property of the corporation, convert it into money, and apply the proceeds in payment of its debts. The sequestration is in the nature of an attachment or execution on behalf of the creditors. Bankruptcy proceedings have been likened to an equitable attachment (In re. Hinds, 3 N. B. R. 351, Fed. Cas. No. 6,516) in respect to their purpose and their effect on the debtor's property. Bankruptcy proceedings, when involuntary, are similar to the proceedings under consideration. The assignee in bankruptcy may avoid a chattel mortgage void as to creditors for want of filing. Bank v. Hunt, 11 Wall. 391. He succeeds to the rights of creditors, as well as of the bankrupt. Bump, Bankr. 513, and cases cited. A receiver in proceedings supplementary to execution

also has the rights of the creditors at whose instance he was appointed, as well as of the debtor, and may avoid transfers void as to such creditors, though good as to the debtor. High, Rec. § 454, and cases cited. A receiver of an insolvent corporation has the same powers and functions as a receiver upon a creditors' bill, or upon proceedings supplementary to execution. Powers v. Paper Co., 60 Wis. 23, 18 N. W. 20. That he should have the power to enforce the rights which the creditors, but for the proceedings, might have enforced in their own behalf, seems reasonable. The pendency of the proceedings disables the creditors to go on, each in his own behalf, to enforce his claim by action, judgment, execution, and levy. So that, unless all the rights of the creditors can be enforced in this proceeding, unless their right to avoid transfers can be made available by means of it, then it is, to some extent, an obstruction, rather than a remedy, to them. It is evident that it was intended to facilitate, and not to hinder, a complete remedy; and this it will not do unless its scope is to apply to satisfaction of the creditors all the property of the corporation applicable to that purpose,—that is, all the property which, but for the proceeding, they could have so applied. For these reasons, we decide that the receiver may avoid any transfers void as to creditors."

In determining what property was realty and what personalty, the court quote with approval the general rules laid down by that court in Wolford v. Baxter, 33 Minn. 12, 21 N. W. 744, and in applying those rules to the case under consideration say:

"The rule indicated by what we have quoted seems to be that, where a building is constructed and fitted for a particular kind of manufacturing, and machinery necessary and adapted to that kind of manufacturing is placed in the building with intent that it shall remain and be used permanently in the business, and as a part of what may be termed the outfit for the business, the different articles of such machinery thereby become fixtures, though not in any way, either actually or constructively, annexed to the land. There are few cases that dispense with annexation to the realty, either by the thing itself being in some way annexed, or its being accessory to and a necessary part of some other thing which is annexed. Few regard as sufficient a mere ideal annexation; that is, a connection between the realty and the thing existing only in intent, and not in fact. In the case referred to, this court said: 'While physical annexation is not indispensable, the adjudicated cases are almost universally opposed to the idea of mere loose machinery or utensils, even where it is the main agent or principal thing in prosecuting the business to which the realty is adapted, being considered part of the freehold for any purpose. To make it a fixture, it must not merely be essential to the business of the structure, but it must be attached to it in some way, or at least it must be mechanically fitted, so as, in ordinary understanding, to constitute a part of the structure itself. It must be permanently attached to, or the component part of, some erection, structure, or machine which is attached to the freehold, and without which the erection, structure, or machine would be imperfect or incomplete. * * * Intent alone will not convert a chattel into a fixture.' Any less exacting rule than that laid down would, in effect, do away, in a great variety of cases, with the fundamental distinction between real and personal property. The general rule is that, to be a part of the realty, the machine must be physically attached to it, or be, in ordinary understanding, part of a building upon it; as where the building is wholly or in part constructed for the machine, or the machine is constructed for the building, or some part of it, and is fitted into it. The instances where this is not required are exceptional, and we do not think the exceptions should be extended. Intention is important to be considered in determining whether an article is or is not a fixture, not, however, that it may, as some few of the cases seem to hold, be in lieu of actual or constructive annexation; but when an article is annexed it is important to inquire, was it annexed with intent to make it a permanent accession to the freehold, or for only a temporary purpose? And, where attachment once made is severed, was the severance intended to be permanent or temporary?"

The order of the court will be that the lien of the defendant Samuel B. Sneath, trustee, attaches only to the property of the Brewer Pottery Company described and appraised in schedules 1 and 2; that the property described and appraised in schedule 3 is not subject to said mortgage, but is to be applied to the payment of the claims of the unsecured creditors, including the unsatisfied claim of said Samuel B. Sneath, as trustee, after applying the pro rata amount to be realized from the sale of the property in schedules 1 and 2. And in ascertaining the amounts to be distributed the sum of $5,000, forfeited by Albert Brewer, is to be added to the sum of $36,075, the proceeds of sale, from which the costs and expenses of this suit are first to be deducted.