### EGAN STATE BANK v. RICE.

#### (Circuit Court of Appeals, Eighth Circuit. November 26, 1902.)

#### No. 1,660.

1. BANKRUPTCY—CHATTEL MORTGAGE—VALIDITY.

> Under Bankr. Act 1898, § 67e [U. S. Comp. St. 1901, p. 3449], providing that incumbrances of property made by one adjudged bankrupt within four months prior to the filing of the petition, with intent to hinder or defraud his creditors, shall be void as against them, a chattel mortgage given by a merchant to a bank on his stock in trade within four months prior to his bankruptcy, he retaining possession under an agreement that the proceeds of sales should go to pay the mortgage and other debts, and he from the proceeds paying expenses and debts in general, is void, as against the creditors, notwithstanding the fact that it contained a provision requiring the merchant to make daily deposits of all sales, to apply on the debt to the bank.

Appeal from the District Court of the United States for the District of South Dakota.

Henry H. Platts, a retail merchant of Egan, S. D., on December 8, 1899, borrowed of the appellant bank $600 on his promissory note, payable in six months, secured by chattel mortgage upon Platts' stock of merchandise, except groceries. This mortgage was recorded August 10, 1900. In the meantime six months' interest was paid June 8, 1900, and the note was then extended, by writing indorsed thereon, for another six months. On November 2, 1900, Platts borrowed of appellant bank the further sum of $500, and took up his previous note, and then executed to said bank his 11 new promissory notes, for varying amounts, but in all aggregating $1,100, and payable one on the last day of every month from that date until September 30, 1901, with annual interest at 12 per cent., all secured by another chattel mortgage, made November 2, 1900, covering Platts' entire stock of merchandise and his store fixtures, and any additions to or replacements of the stock, and was

further to secure all further advances that might be made to Platts by the bank. And thereby Platts further agreed to make daily deposits of all sales of goods, to apply on the notes so secured, until all should be paid. This chattel mortgage was recorded November 8, 1900. From the giving of the first chattel mortgage until Platts' business was closed by the proceedings in bankruptcy, he dealt with said bank as an ordinary depositor, depositing therein from the proceeds of his sales at least $2,500, of which from $300 to $400 was so deposited after November 2, 1900. He paid therefrom on his debt to the bank, aside from the interest so paid in June, only one note, for $75, which was secured by the last mortgage, and due November 30, 1900, but not paid till December 8, 1900. All the rest of such deposits were, with the consent of the bank, paid out on checks of Platts, and used to pay other creditors, or for other uses. Upon the petition of creditors, filed December 13, 1900, Platts was adjudicated a bankrupt January 3, 1901, and the appellee, George Rice, was thereafter duly appointed trustee of his estate in bankruptcy; and, by order of the court, the stock of merchandise of the bankrupt was sold free of incumbrance. On the petition of the bank an order was made that the trustee show cause why the claim of the bank, secured by the chattel mortgage, should not be paid in full from the proceeds of the property so sold. The referee in bankruptcy, to whom the matter was referred, heard the testimony and made his findings of fact, and, upon his conclusions of law therefrom, made his decision and order in favor of the bank. On request of the trustee, the referee certified the questions involved, with the testimony, findings of fact, and his legal conclusions, to the judge, for review. Upon full hearing before the judge, it was on August 20, 1901, ordered and adjudged that the order of the referee requiring the trustee to pay to the Egan State Bank the amount secured by said chattel mortgage of November 2, 1900, be vacated and set aside, with the findings of fact and conclusions of law on which said order was based, and further that such chattel mortgage is null and void, and no lien on the assets in the hands of the trustee. From this judgment or decree this appeal is taken. A fuller report of the case in some particulars, especially in respect to the findings and conclusions of the referee, will be found in the decision of the learned judge of the district court. In re Platts (D. C.) 110 Fed. 126.

E. R. Winans (A. B. Kittridge and W. D. Scott, on the brief), for appellant.

J. Q. Adams (George Rice, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

This appeal questions the correctness of the decision of the learned district judge that upon the evidence it appears that the chattel mortgage of November 2, 1900, made by Platts to the bank, was made by him with intent to hinder and delay his creditors, and was therefore null and void as to his creditors, by the law of South Dakota in respect to such conveyances, as well as under the bankruptcy act of 1898 [U. S. Comp. St. 1901, p. 3418]. Section 67e of this act [U. S. Comp. St. 1901, p. 3449] provides as follows:

"That all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or encumbered as

aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors."

See, also, section 70, subd. 4 [U. S. Comp. St. 1901, p. 3451].

The chattel mortgage under consideration was given by Platts November 2, 1900, within four months of the filing of the petition, December 13, 1900, under which he was adjudged a bankrupt. The district court held that, even if it were valid upon its face, yet the evidence showed clearly that it was given by Platts with the intent and purpose on his part to hinder and delay his creditors, and was therefore null and void as against them, and the trustee who represents them.

The law applicable to such case is stated very clearly in Horton v. Williams, 21 Minn. 187, 190, as follows:

"A mortgage of chattels, coupled with an agreement that the mortgagor may retain possession of the mortgaged property, and sell or dispose of it as his own, without satisfaction of the mortgage debt, is of no effect as a security, and can only operate to hinder, delay, and defraud the creditors of the mortgagor and subsequent purchasers and mortgagees. In the early case of Chophard v. Bayard, 4 Minn. 533 (Gil. 418), it was held by this court, in accordance with sound principle and the weight of authority, that such a mortgage was necessarily fraudulent as against the mortgagor's creditors. And see Edgell v. Hart, 9 N. Y. 213, 59 Am. Dec. 532; Place v. Langworthy, 13 Wis. 629, 80 Am. Dec. 758; Steinat v. Deuster, 23 Wis. 136; Collins v. Myers, 16 Ohio, 547; Freeman v. Rawson, 5 Ohio St. 1; Bank v. Hunt, 11 Wall. 391, 20 L. Ed. 190. If the intent that the mortgagor may retain possession of the goods, and dispose of them as owner, is apparent in the mortgage itself, the existence of such intent is to be determined by the court, otherwise the existence of the intent is a question for the jury upon the evidence; but in every case, if the intent is found to exist, the law declares the mortgage to be fraudulent. Gere v. Murphy, 6 Minn. 305 (Gil. 213); Gardner v. McEwen, 19 N. Y. 123; Russell v. Winne, 37 N. Y. 591, 97 Am. Dec. 755, and cases supra. The conduct of the parties in dealing with the mortgaged property may, however, furnish evidence, in some cases amounting to a moral certainty, that the mortgage was executed with a fraudulent intent. Thus, in the case of a mortgage on a stock of goods in a retail shop, when the mortgagor continues in possession, making sales from day to day as owner, and dealing with the goods and the proceeds as his own, with the mortgagee's knowledge and assent, it is extremely difficult to resist the conclusion that this course of conduct on the part of the mortgagor was contemplated and intended by the parties when the mortgage was made. See Griswold v. Sheldon, 4 N. Y. 581; Freeman v. Rawson, 5 Ohio St. 1; Russell v. Winne, 37 N. Y. 591, 97 Am. Dec. 755."

This is precisely what was done by Platts after giving the chattel mortgage of November 2, 1900. He continued to sell the goods, making no account of the sales to the bank, and to use the proceeds of the sales for the payment of other debts, or otherwise as he pleased, with the full knowledge and assent of the bank; paying on the secured debt only $75 out of the $300 to $400 proceeds of sales realized by him from the mortgaged stock before he was stopped by the proceedings in bankruptcy. As the proceeds of the sales were deposited by him in the same bank as an ordinary customer and depositor, and paid out again by the same bank upon his checks, it would be clear, if there was no other evidence in the case, that such was the intention and

understanding of the parties when the mortgage was given. And this presumption is strengthened by the unquestioned fact that the mortgage of December 8, 1899, which continued till replaced by the mortgage under consideration, was of the same fraudulent character as to creditors. That prior mortgage was given to secure a note of $600. While it existed, Platts deposited in the bank from the proceeds of his sales over $2,000, and still used all that money himself, without paying a cent of the mortgage debt, except six months' interest. That the same course was continued under the subsequent mortgage is convincing evidence that such was the intention when the last mortgage was given. And the testimony of Mr. Struble, the cashier of the bank, was to the effect that, when the last mortgage was given, the agreement between the parties was that the money which Platts got from the sales of the mortgaged goods should go to pay the mortgage, and also to pay off his indebtedness, or, as Platts testified, he was to pay the notes to the bank as they became due, and apply the rest to the payment of debts he was owing for goods. In other words, so long as he should continue to pay the notes to the bank as they should successively mature, the goods and their proceeds were to be at his own disposal. Upon these facts, the legal effect of the last mortgage, as well as the earlier one, was to hinder and delay the creditors of Platts. The agreements which gave the mortgage this character and effect were made by Platts, and acted on by him, and were therefore intentional and of purpose on his part.

The decisions of the supreme court of South Dakota are in entire accord with Horton v. Williams, 21 Minn. 187, which is cited with approval in the earliest of the cases. Greeley v. Winsor, 1 S. D. 117, 45 N. W. 325, 36 Am. St. Rep. 720; Id., 1 S. D. 618, 48 N. W. 214; Mercantile Co. v. Gardiner, 5 S. D. 246, 58 N. W. 557.

There was no error in the findings and decision of the district court, and the decree and order appealed from are affirmed.